IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN LEDESMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18 CV 3947 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MARRIOTT INTERNATIONAL, INC. and | ) |
| STARWOOD HOTELS & RESORTS | ) Magistrate Judge Jeffrey I. Cummings |
| WORLDWIDE, LLC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Ledesma initiated this action against defendants Marriott International, Inc. ("Marriott") and Starwood Hotels & Resorts Worldwide, LLC ("Starwood") for personal injuries arising out of an elevator accident that occurred on February 13, 2018 while he was a guest at the Westin Chennai Velachery Hotel ("Westin Velachery" or "Hotel") in Chennai, India. Ledesma alleges that he was riding in a Hotel elevator "when it suddenly and without warning fell several floors, causing him to sustain significant and permanent spinal injuries," (Dckt. #41 at ¶ 22), and he brings negligence claims against the defendants for their failure to properly maintain and repair the elevator.

Defendants – one of which (Starwood) is a wholly owned subsidiary of the other (Marriott) (Dckt. #26 at 12) – have steadfastly maintained that plaintiff has sued the wrong entities because they do "not own, possess, occupy or otherwise control" the Westin Velachery. (Dctk. #36 at 4).[1] Defendants further explain that: (1) they are the "American parent entities" of

---

[1] Indeed, defendants sought summary judgment on this basis early on in the case, (*Id.*), but the District Court denied that motion based on its finding that "there is a genuine dispute of material fact over the ownership or control of the Westin Velachery." *Ledesma v. Marriott International, Inc.*, No. 18-cv-3947, 2020 WL 6747005, at *6 (N.D.Ill. Nov. 16, 2020).

an Indian entity known as Starwood Hotel & Resorts India Private Limited ("Starwood India"); (2) a second Indian entity known as MFAR Hotels and Resorts Private Ltd. ("MFAR") owns the Westin Velachery; (3) Starwood India signed a service agreement with MFAR to operate the Westin Velachery; and (4) a third Indian entity known as Hephzi Elevators International Co. Pvt. ("Hephzi") signed an agreement to service and repair the Hotel elevator at issue. (Dckt. #150 at 1-3).

In his amended motion to compel, (Dckt. #146), plaintiff asserts that defendants have produced only two documents related to the servicing and maintenance of the Hotel elevator in response to his requests for production and he seeks an order directing defendants to produce *all* such documents. For the reasons set forth below, plaintiff's motion is granted.

I.  **BACKGROUND**

Discovery in this matter has been ongoing since mid-2021 when plaintiff served a comprehensive set of document production requests and interrogatories on defendants that were largely focused on obtaining documents and information related to the Hotel's elevator. (*See* Dckt. #146-1; Dckt. #146-2; Dckt. #146-7). After receiving a number of extensions of time to respond, defendants served their responses to plaintiff's written discovery in February 2022. (Dckt. #111). Defendants asserted one of the following objections to every one of plaintiff's individual requests for production:

- Overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence. Such records not maintained by answering defendant;

- Seeks information from third parties and information not within its possession, custody, control or personal knowledge;

- Seeks information from third parties and information not within its possession, custody, control or personal knowledge. This request is better directed to the elevator maintenance company;

2

- Seeks information from third parties and information not within its possession, custody, control or personal knowledge. Defendant does not own and/or manage the subject property; and

- Duplicative of [prior request].

(Dckt. #146-1 (Starwood's Responses to Plaintiff's RFPs); Dckt. #146-2 (Marriott's Responses to Plaintiff's RFPs).[2]

Notwithstanding their objections, defendants produced twenty-seven documents in response to plaintiff's RFPs including two that pertain to the servicing and maintenance of the Hotel's elevator. (Dckt. #146 at 2). Defendants have also produced the Operating Services Agreement ("Operating Agreement") for the Westin Velachery that was executed between Starwood India and MFAR (Dckt. #151), the Lifts Service Agreement ("Lifts Agreement") executed by Hephzi (Dckt. 146-3 at 5-15), and video footage depicting plaintiff's activities at the Hotel, (*see* Dckt. #146-8 at 2). Finally, defendants have produced an MFAR employee named Vasu Babu for a deposition and submitted an affidavit from him in support of their ill-fated motion for summary judgment. (Dckt. #36 at 27-28). Plaintiff now seeks to compel defendants to fully respond to his requests for production.

## II. ANALYSIS

### A. Standard for determining whether a party has "control" over documents in the possession of a non-party for purposes of Rule 34.

Under Federal Rule of Civil Procedure 34(a)(1), a party is required to produce documents that are within its "possession, custody, or control." "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Meridian Lab'ys, Inc. v.*

---

[2] Defendants also objected to most of the interrogatories, but plaintiff has not placed the sufficiency of defendants' answers at issue for purposes of this motion.

3

*OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D.Ill. 2019), *quoting Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 542 (N.D.Ill. 2004); *see also Thermal Design, Inc. v. Am. Soc'y of Housing, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 838-39 (7th Cir. 2014) (citing test for control in *Dexia*); *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988) ("Control is defined . . . as the legal right to obtain the documents required on demand"), *quoting* C. Wright & A. Miller, 8 *Federal Practice & Procedure* § 2210. "The location of the documents, whether within the territorial jurisdiction of the court or not, is irrelevant." *Gerling Int'l Ins.*, 839 F.2d at 140.

"The determination of whether an entity has 'control' over documents under Fed. R. Civ. P. 34(a) is a 'very fact specific' inquiry," *Davis v. Gamesa Tech. Corp.*, No. 08 C 4536, 2009 WL 3473391, at *2 (E.D.Pa. Oct. 20, 2009), *quoting Pitney Bowes, Inc., v. Kern Int'l., Inc.*, 239 F.R.D. 62, 66 (D.Conn. 2006), that is made within the district court's discretion. *Thermal Design*, 755 F.3d at 839. The "party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991).

Where – as here – the moving party seeks the production of documents in the possession of a non-party corporation with which the non-moving party has some sort of relationship (*i.e.,* as an affiliate, sister corporation, parent, or subsidiary), the parties agree that courts determine the issue of control by considering the following factors:

(1) commonality of ownership;

(2) exchange or intermingling of directors, officers, or employees of the two corporations;

(3) the exchange of documents in the ordinary course of business;

(4) the non-party's connection to the transaction at issue;

>   (5) any benefit or involvement by the non-party corporation in the litigation;
>
>   (6) the corporate party's marketing and/or servicing of the non-party company's products; and
>
>   (7) the financial relationship between the companies.

*Meridian*, 333 F.R.D. at 135-36; *In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F.Supp.2d 969, 977 (N.D.Ill. 2010) (citing cases); *Wachovia Sec., LLC v. Loop Corp.*, No. 05 C 3788, 2008 WL 2625907, at *2 (N.D.Ill. June 27, 2008); *see also Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D.Md. 2006) (noting that the specific form of the corporate relative involved does not matter when analyzing control under Rule 34).

> **B.      An analysis of the relevant factors shows that defendants have control over the documents related to the Hotel elevator's servicing and maintenance.**

The parties dispute whether defendants have control over the remaining responsive documents relating to the servicing and maintenance of the Hotel elevator such that they have an obligation to produce them pursuant to Rule 34.  After a review of the record, it appears that two threshold questions must be answered to resolve this dispute.  First, defendants acknowledge that the entity that signed the Lifts Agreement with Hephzi – whether it be MFAR (as defendants assert) or Starwood India (who operated the Hotel on MFAR's behalf) – is entitled to obtain the remaining elevator service documents from Hephzi.  (Dckt. #150 at 2).[3]  Thus, the identity of the entity that entered into the Lifts Agreement with Hephzi must be determined.  If it was in fact Starwood India that executed the Lifts Agreement, the second question is whether Starwood and/or Marriott have sufficient ties to Starwood India under the operative test such that they have

---

[3] Among other things, the Lifts Agreement reflects Hephzi's promise to: (1) make "[r]egular visits to the premises (12 in a year)" to inspect and maintain the Hotel elevators; (2) "[p]erform all necessary safety checks"; (3) "[p]erform annual equipment safety and quality audit[s]"; and (4) "[m]ake available [its] service reports for your perusal."  (*See* Dckt. #146-3 at 14; Dckt. 146-7 at 6).

"control" over the remaining responsive documents even though the documents are in the physical possession of Hephzi.

### 1. The record shows that Starwood India (and not MFAR) executed the Lifts Agreement with Hephzi.

Although defendants maintain that the Lifts Agreement was executed by MFAR, documents in the record before the Court – which defendants have produced during discovery – show that it was Starwood India – and not MFAR – that contracted with Hephzi.

To begin, the Lifts Agreement itself states:

By and between

The Westin Chennai Velachery ('Operator') as Operator for MFAR Hotels & Resorts Pvt. Ltd. ('Owner') with respect to The Westin Chennai

And

HEPHZI ELEVATORS INTERNATIONAL CO PVT LTD (as 'Contractor')

From: 01st January 2018
To: 31st December 2018

\* \* \*

RECITAL

WHEREAS, Manager enters this Agreement pursuant to express authority given by Owner pursuant to the Hotel management agreement between Owner and Manager ('Management Agreement'), subject to the approval rights, if any, of Owner; and

WHEREAS, Operator operates the The Westin Chennai, 154, Velachery Main Road, Velachery, Chennai – 600042. ('Hotel'); and

WHEREAS, Manager desires to engage Contractor to provide first-class Lift service for the Hotel in a manner conforming to the Hotel's standards.

(Dckt. #146-3 at 5-6).

6

Thus, the text of the Lifts Agreement plainly specifies the identity of the "Hotel" (The Westin Chennai), its "Owner" (MFAR), and the "Contractor" (Hephzi). The Lifts Agreement's description of the "Manager" and "Operator" also indicates – albeit through inference – that Starwood India fills both roles. In particular, the Lifts Agreement provides that the "Manager" who entered into the Lifts Agreement did so with the express authority given by the Owner pursuant to the Hotel management agreement between the Owner and the Manager. (Dckt. #146-3 at 6). Moreover, the *only* "Hotel management agreement" involving MFAR in the record is the Operating Agreement between Starwood India and MFAR, which expressly grants Starwood India the "exclusive right, title and authority . . . to supervise, direct and control, in the name and on behalf of Owner, all maintenance and repair for the Hotel." (Dckt. #151 at 6 & 13 (granting Starwood India the right to perform all "maintenance and repair" and "capital improvements" as it "deems necessary or advisable to . . . keep the Hotel in good working order and condition")). The Operating Agreement further specifies that MFAR engaged Starwood India "to supervise, direct and control the Operations of all aspects of the Hotel on an exclusive basis during the Operating Term." (*Id*.).

The conclusion that Starwood India is the "Manager" and "Contractor" referenced in the Lifts Agreement is strengthened by the fact that the Agreement is executed by three Starwood India employees (namely, Lakshmanan Ramanathan (General Manager), Muralee Krishnan (Director of Engineering), and Anish Kumar (Director of Finance)) on behalf of the Operator. (Dckt. #146-3 at 13). These individuals have westin.com email addresses, (Dckt. #146-3 at 25), and Starwood admits in its interrogatory answers that Muralee Krishnan managed the Lifts Agreement with Hephzi. (Dckt. #146-7 at 5).

7

In sum: the record presently before the Court establishes that Starwood India was the entity who executed the Lifts Agreement with Hephzi. As such, the Court finds for purposes of this motion that Starwood India has the contractual right to obtain from Hephzi the remaining responsive documents concerning the Hotel elevator's maintenance and servicing.

> **2. The record establishes that Starwood has the power to direct Starwood India (its corporate affiliate) to obtain responsive documents from Hephzi.**

The parties also dispute whether defendants have any control over Starwood India. For their part, Marriott and Starwood assert that they have "no control over the company (*i.e.*, Starwood India) that signed the service agreement . . . with the owners, mFar," (Dckt. #150 at 2), despite their repeated admission that they are the "American parent entities" of Starwood India. (*Id.* at 1-3). In support of this assertion, defendants rely exclusively on the 2018 affidavit of Carol Frensilli, (Dckt. #152), which they previously submitted in support of their motion for summary judgment. In her affidavit, Frensilli states that to the "best of her knowledge, [Defendants] have no ownership or control [of Starwood India]." (*Id*. at 2). However, Frensilli testified at her subsequent deposition that she: (1) had "no knowledge . . . at all" of Starwood India; (2) did not know whether Marriott owned Westin; (3) did not know whether Starwood owned any Westin entities; (4) could not verify whether the Westin Velachery Hotel was in any Marriott internal records; and (5) only understood the U.S. and Canadian companies that were owned by Marriott. *Ledesma*, 2020 WL 6747005, at *2. After considering her affidavit and testimony, the District Court found that Frensilli has "limited personal knowledge of or competence to testify about the ownership or control of [Starwood India]," and it disregarded her testimony on that issue. *Id*. at *4.

8

The District Court's finding as to Frensilli's lack of knowledge regarding Starwood India and its relationship with Starwood and Marriott is law of the case. *See, e.g., Starcon Int'l v. Int'l Bhd. Of Boilermakers*, 450 F.3d 276, 278 (7th Cir. 2006) ("The doctrine of law of the case precludes reexamining a previous ruling (unless by a higher court) in the same case unless it was manifestly erroneous."). Defendants do not take issue with the District Court's finding regarding Frensilli, let alone show that the finding was manifestly erroneous. To the contrary, and quite inexplicably, defendants do not acknowledge the District Court's finding at all. Accordingly, this Court will likewise disregard Frensilli's affidavit for purposes of its ruling on plaintiff's motion to compel.

The only other evidence in the record bearing on the relationship between Starwood India and defendants is the Operating Agreement, which supports plaintiff's position. In particular, the Operating Agreement states that Starwood India[4] is an "affiliate" of Starwood Hotels & Resorts, Worldwide, Inc.,[5] and the meaning of "affiliate" is defined as:

> any Person that, directly or indirectly, controls, is controlled by, or is under common control with, another Person. As used herein, the term 'control' shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of any Person, or the power to veto major policy decisions of any Person, whether through the ownership of voting securities, by agreement, or otherwise.[6]

---

[4] Although the Operating Agreement was initially executed between MFAR and Starwood Asia Pacific Hotels & Resorts PTE. LTD., India Branch, the latter entity assigned the Agreement to Starwood India in advance of the accident involving plaintiff. (Dckt. #146-5 at 2).

[5] Starwood filed an SEC Form 8-K on September 23, 2016 indicating that Starwood Hotels & Resorts Worldwide, Inc. was converted into a Maryland limited liability company and its name was changed to Starwood Hotels & Resorts Worldwide, LLC (the defendant here) effective that same date. *See* https://www.sec.gov/Archives/edgar/data/316206/000119312516718027/d244396d8k.htm; *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Miys Healthcare Sols.*, 778 F.Supp.2d 858, 875 n.6 (N.D.Ill. 2011) (courts may take judicial notice of documents filed with the SEC). In addition, the Operating Agreement defines "Starwood" to include "its successors and assigns, including any successor parent company" of Starwood India. (Dckt. #151 at 59).

[6] The record is not clear as to how Starwood obtained its control over Starwood India (i.e., whether through ownership of voting securities, by agreement, or otherwise) though the fact that Starwood is a

(Dckt. #151 at 48, 51, 56 (defining "Person" as an "Individual or Entity" (inclusive of corporations and limited liability corporations)). Thus, Starwood controls Starwood India under the terms of the Operating Agreement and it has the "power to direct" Starwood India to obtain the remaining responsive documents from Hephzi. *See Batista v. Nissan N. Am., Inc.*, No. CV 14-24728-CIV, 2015 WL 10550409, at *2 (S.D.Fla. Dec. 8, 2015), *quoting Costa v. Kerzner Intern. Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D.Fla. 2011) (Control "merely requires that a party has the 'right, authority, or practical ability to obtain the materials sought on demand.'").

### 3. Other relevant factors support the conclusion that Starwood has sufficient control over Starwood India to direct it to obtain the remaining responsive documents from Hephzi.

Several of the factors outlined in *Meridian*, 333 F.R.D. at 135-36, support a finding that Starwood has sufficient control over Starwood India to direct it to obtain the remaining responsive documents concerning the Hotel elevator from Hephzi. First, Starwood India has a direct connection to the transaction at issue (namely, plaintiff's elevator accident), it is involved in this litigation because it hired Hephzi to provide first-class elevator service for the Hotel in a manner conforming to the Hotel's standards, and one of its employees (Director of Engineering Krishna) managed the Lifts Agreement. (Dckt. #146-3 at 6; Dckt. #146-7 at 5). Starwood India along with Marriott are named insureds under Hephzi's professional liability insurance policy. (Dckt. #146-3 at 8). Moreover, Starwood India was responsible under the Operating Agreement for the overall maintenance and repair necessary to keep the Hotel in good working order and condition. (Dckt. #151 at 13). It also appears that several Starwood India employees were present at the scene of the accident at or about the time it occurred. (*See* Dckt. #146-7 at 1).

---

named insured under MFAR's liability insurance policy, (Dckt. #146-7 at 2), suggests that there may be common ownership since Starwood India (and not Starwood) executed the Operating Agreement with MFAR.

10

Finally, the Operating Agreement reflects that Starwood India is closely connected with Starwood, multiple other Starwood affiliates, and the associated Brand (namely, the Westin brand, (Dckt. #151 at 49)). In particular: (1) MFAR entered into agreements with several different affiliates of Starwood to provide various services, including pre-opening personnel support, needed for the Hotel's operations, (Dckt. #151 at 5, 62-63); (2) Starwood India had the right to share goods, services and/or personnel with other Starwood properties to achieve cost savings and efficiencies, (Dckt. #151 at 18-19); (3) Starwood India was required to ensure that the Hotel to provide a level of service and quality consistent with other Brand hotels and in accordance with Brand standards, (Dckt. #151 at 6); and (4) Starwood India had the right to market, promote and/or sell any products or services offered by any Starwood affiliate as a Brand partner, (Dckt. #151 at 8). Indeed, on summary judgment, plaintiff offered evidence that Starwood India placed Westin branding throughout the Hotel, allowed guests to book rooms at the Hotel through Marriott's website, and caused the Hotel to participate in the Marriott Starwood Bonvoy Rewards Program. *See Ledesma*, 2020 WL 6747005, at *5. This evidence and more led the District Court to find that a "wide range of the hotel's traits and guest experiences at the Westin Velachery where Plaintiff allegedly was injured could lead a reasonable jury to believe that the foreign hotel had an agency relationship with the U.S. hotel company of the same name." *Id.* at *6.

In sum: in consideration of all of the above factors, the Court finds that Starwood has a sufficiently close working relationship and control over Starwood India such that it has a legal right to direct Starwood India to obtain the remaining responsive documents regarding the Hotel's elevator from Hephzi. *See, e.g., Costa*, 277 F.R.D. at 472 (finding that "the companies from which Plaintiff is seeking discovery share commonality in their corporate structure and

11

operations sufficient to require Defendants to produce all responsive documents in the possession, custody, or control of their Bahamian Affiliates.").

### 4. Plaintiff is not required to first resort to the Hauge Convention to obtain the documents he seeks from defendants.

Finally, the Court rejects defendants' assertion that plaintiff's motion should be denied because he could easily obtain documents directly from Hephzi under the Hague Convention if he would merely incur the costs of doing so. (Dckt. #150 at 6-7).[7] "The Supreme Court rejected the precise argument advanced by [d]efendants here that parties must resort to Hague Convention procedures first, prior to utilizing the procedures made available by the Federal Rules of Civil [Procedure]." *Costa*, 277 F.R.D. at 473 (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 542 (1987)). Defendants' assertion also ignores both the complex procedures of the Hague Convention and the well-established principle that the Convention "serves merely as an alternative or 'permissive' route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants *and third parties alike.*" *Axtria, Inc. v. OKS Group, LLC*, No. 20-CV-6424, 2021 WL 6136600, at *2 (E.D.Pa. Dec. 29, 2021) (emphasis in original), *objections overruled sub nom. Axtria Inc. v. OKS Grp., LLC*, No. CV 20-6424, 2022 WL 774038 (E.D.Pa. Mar. 15, 2022).

---

[7] In addition to cost considerations, plaintiff has also expressed a concern about the potential delay with utilizing the Hague Convention and the difficulty in finding a person with sufficient expertise to guide him through the Hague Convention procedures. (Dckt. #146 at 3).

## CONCLUSION

For all of the above reasons, plaintiff's amended motion to compel, (Dckt. #146), is granted and defendant Starwood is ordered to produce the remaining documents concerning the maintenance and servicing of the Hotel elevator that are responsive to plaintiff's requests for production on or before April 27, 2023.

**DATE:** April 6, 2023

**Jeffrey I. Cummings**
**United States Magistrate Judge**

!